IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAMIEN D. BURDETTE, CRAIG PETTY and JEROD SOUTHERN, JR., | : : : : | Civil Action File No. |
| Plaintiffs, | : : | |
| vs. | : : | |
| EMPIRE WRECKER, LLC and ANTHONY LAQUINN BLACK, SR., | : : : : | |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Damien D. Burdette ("Burdette"), Craig Petty ("Petty"), and Jerod Southern, Jr. ("Southern") (collectively "Plaintiffs") bring this Complaint against Defendants Empire Wrecker, LLC ("Empire Wrecker") and Anthony Laquinn Black, Sr. ("Black") (collectively "Defendants") and show the Court as follows:

## INTRODUCTION

### 1.

This wage and hour case is brought on behalf of three former employees of Empire Wrecker. Defendants wrongfully misclassified Burdette, Petty and Southern as independent contractors to avoid their obligations under the FLSA. In addition, Defendants retaliated against Burdette after he complained about Defendants violation of the FLSA and failed to pay him for his last day of work.

2.

In addition to their federal causes of action, Plaintiffs Burdette and Southern assert pendent state law claims which arise out of the same set of operating facts as their federal claims.  These are (1) breach of contract, (2) quantum meruit and (3) promissory estoppel.

**JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Empire Wrecker's principal place of business is located in this judicial district, Black resides in this judicial district, and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

5.

Burdette is a natural person who resides in Henry County, Georgia.

6.

Empire Wrecker employed Burdette as a tow truck driver in and around Atlanta, Georgia from approximately September 28, 2017 through November 11, 2017.

7.

Burdette was an "employee" of Empire Wrecker as defined in 29 U.S.C. §
203(e)(1) from approximately September 28, 2017 through November 11, 2017
(Burdette's Relevant Time Period).

8.

Petty is a natural person who resides in DeKalb County, Georgia.

9.

From August 2016 through February of 2017, Empire Wrecker employed Petty
as a tow truck driver in and around Atlanta, Georgia.

10.

Beginning in approximately February of 2017 and continuing through August
of 2017, Empire Wrecker employed Petty as a dispatcher.

11.

Petty was an "employee" of Empire Wrecker as defined in 29 U.S.C. §
203(e)(1) from August of 2016 through August of 2017 (Petty's Relevant Time
Period).

12.

Southern is a natural person who resides in Clayton County, Georgia.

13.

From August 1, 2017 through April 2018, Empire Wrecker employed Southern
as a tow truck driver in and around Atlanta, Georgia.

14.

Southern was an "employee" of Empire Wrecker as defined in 29 U.S.C. § 203(e)(1) from August 1, 2017 through April 2018 (Southern's Relevant Time Period).

15.

Empire Wrecker is a domestic limited liability company organized under the laws of the State of Georgia.

16.

Empire Wrecker is subject to the personal jurisdiction of this Court.

17.

Empire Wrecker may be served with process through its registered agent Anthony Laquinn Black located at 2030 Main Street, NW, Atlanta, Georgia 30188.

18.

At all times material hereto, Empire Wrecker was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

19.

Black is a natural person who resides in Fulton County, Georgia.

20.

Black is subject to the personal jurisdiction of this Court.

21.

Black may be served with process at 2030 Main Street, NW, Atlanta, Georgia 30188 or wherever he may be found.

22.

At all times material hereto, Black was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

23.

At all times material hereto, Plaintiffs were "employees" of Black as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

**INDIVIDUAL COVERAGE**

24.

At all times material to each, Plaintiffs regularly operated tow trucks owned by Empire Wrecker and for the benefit of Empire Wrecker for the purpose of providing towing services for the operators and owners of disabled or abandoned vehicles, thereby keeping the instrumentalities of interstate commerce free from obstructions.

25.

At all times material to each, Plaintiffs were "engaged in commerce" as individual employees of Empire Wrecker as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**ENTERPRISE COVERAGE:**

26.

At all times material hereto, Empire Wrecker was an "enterprise engaged in commerce or in the production of goods for commerce" as defined 29 U.S.C. § 206 (a) and 29 U.S.C. § 207(a)(1).

27.

At all times material hereto, Empire Wrecker employed two or more persons who regularly provided road side services customers on Interstate and U.S. highways, thereby providing for the free flow of traffic on the national highway system.

28.

During 2016, Empire Wrecker had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

29.

During 2017, Empire Wrecker had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

30.

During 2018, Empire Wrecker had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

31.

At all times material hereto, Plaintiffs and two or more employees of Empire Wrecker handled goods which moved in interstate commerce in the furtherance of the commercial purpose of Empire Wrecker including trucks, gasoline, engine oil, i-pads, cellular phones, office supplies, office furniture and telephones.

32.

During 2016, Empire Wrecker had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

33.

During 2017, Empire Wrecker had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

34.

During 2018, Empire Wrecker had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

35.

During 2016, Empire Wrecker had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2017, Empire Wrecker had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During 2018, Empire Wrecker had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

38.

At all times during the relevant time period, Empire Wrecker has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**PLAINTIFFS WERE EMPLOYEES OF EMPIRE WRECKER**

39.

At all times relevant to this action, the work performed by Plaintiffs was integral to Empire Wrecker's business purpose (i.e., towing services).

40.

Throughout the Relevant Time Period, Plaintiffs did not invest in Empire Wrecker's business such that they shared any significant risk of loss.

41.

Throughout the Relevant Time Period, Plaintiffs did not utilize any special skills in the course of their work for Empire Wrecker.

42.

Throughout the Relevant Time Period, Empire Wrecker did not require any formal training, degree, or certificate (other than a driver's license) to allow Plaintiffs to operate its vehicles or perform its business purpose.

43.

Throughout the Relevant Time Period, Plaintiffs did not exercise independent business judgment in the course of their work for Empire Wrecker.

44.

Throughout the Relevant Time Period, Plaintiffs did not possess commercial driver's licenses.

45.

Throughout the Relevant Time Period, Empire Wrecker controlled the rate of Plaintiffs' pay.

46.

Throughout the Relevant Time Period, Empire Wrecker controlled Plaintiffs' work hours.

47.

Throughout the Relevant Time Period, Empire Wrecker controlled the manner in which Plaintiffs' work was performed.

48.

Throughout the Relevant Time Period, Plaintiffs did not solicit towing customers on behalf of Empire Wrecker.

49.

Throughout the Relevant Time Period, all of Plaintiffs' working efforts were directed at serving Defendants' customers.

50.

Throughout the Relevant Time Period, Defendants provided Plaintiffs with all tools, equipment, and other materials necessary for Plaintiffs to perform their job as tow truck drivers, including the tow trucks.

51.

At all times during the Relevant Time Period, Plaintiffs were "employees" as defined in 29 U.S.C. § 203(e) in connection with their work for Empire Wrecker as a matter of economic reality.

52.

At all times during the Relevant Time Period, Empire Wrecker was Plaintiffs' "employer" as defined in 29 U.S.C. § 203(d) as a matter of economic reality.

**STATUTORY EMPLOYER**

53.

At all times during the relevant time period, Black exercised operational control over Plaintiffs' work activities.

54.

At all times during the relevant time period, Black was involved in the day to day operation of the Empire Wrecker in which Plaintiffs worked.

55.

At all times during the relevant time period, Empire Wrecker vested Black with supervisory authority over Plaintiffs.

56.

At all times during the relevant time period, Black exercised supervisory authority over Plaintiffs.

57.

At all times during the relevant time period, Black scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

58.

At all times during the relevant time period, Black exercised authority and supervision over Plaintiffs' compensation.

**EXEMPTIONS**

59.

At all times material hereto, Plaintiffs were not exempt from the minimum wage requirements of the FLSA for any reason.

60.

At all times material hereto, Plaintiffs were not exempt from the maximum hour requirements of the FLSA for any reason.

61.

At all times material hereto, Empire Wrecker did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

62.

At all times material hereto,  Empire Wrecker did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

63.

At all times material hereto, Empire Wrecker did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

64.

At all times material hereto, Plaintiffs did not supervise two or more employees.

65.

At all times material hereto, Empire Wrecker did not employ Plaintiffs in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

66.

At all times material hereto, Plaintiffs were not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption (29 U.S.C. § 213(b)(1)).

67.

At all times material hereto, Plaintiffs' work for Empire Wrecker did not involve interstate commerce as defined by the Motor Carrier Act (49 U.S.C.A. § 10521).

68.

At all times material hereto, Plaintiffs did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act (49 U.S.C.A. §31132(1)).

69.

At all times material hereto, Plaintiffs never traveled beyond the borders of the State of Georgia while in the performance of their duties for Empire Wrecker.

70.

At all times material hereto, Plaintiffs had no reasonable expectation that they would be required to travel outside of Georgia in the performance of their duties for Empire Wrecker.

**ADDITIONAL FACTUAL ALLEGATIONS**

71.

During all times relevant, Empire Wrecker compensated tow truck drivers on a commission only basis.

72.

Upon hire, Empire Wrecker advised Burdette that he would compensated through the payment of commissions only calculated at 34% of the revenues derived from his operation of Empire Wrecker's tow truck.

73.

Empire Wrecker failed to pay Burdette at 34% of the revenues derived from his operation of Empire Wrecker's vehicle.

74.

At all times material hereto, Empire Wrecker regularly scheduled Burdette to work five to seven days during each work week.

75.

At all times material hereto, Burdette regularly worked 12 hour shifts (7:00 p.m. until 7:00 a.m.) on weekdays.

76.

At all times material hereto, Burdette normally worked 5 hour shifts when scheduled on a Saturday.

77.

At all times material hereto, Burdette normally worked 7 hour shifts when scheduled on a Sunday.

78.

At all times material hereto, Burdette regularly worked 60-72 hours during most work weeks.

79.

Upon hire, Empire Wrecker advised Petty that he would compensated through the payment of commissions only calculated at 30% of the revenues derived from his operation of Empire Wrecker's truck.

80.

Empire Wrecker failed to pay Petty at 30% of the revenues derived from his operation of Empire Wrecker's truck.

81.

While he worked as a dispatcher from approximately February of 2017 through August of 2017, Empire Wrecker compensated Petty at a rate of $600.00 per week.

82.

During his employment, Empire Wrecker regularly scheduled Petty to work 6-7 days during each work week.

83.

At all times material hereto, Petty regularly worked 12 hour shifts (from 6:00 a.m. until 6:00 p.m.) for Empire Wrecker.

84.

At all times material hereto, Petty regularly worked at 70 hours during most work weeks.

85.

Upon hire, Empire Wrecker advised Southern that he would compensated through the payment of commissions only calculated at 30% of the revenues derived from his operation of Empire Wrecker's truck.

86.

Empire Wrecker failed to pay Southern at 30% of the revenues derived from his operation of Empire Wrecker's truck.

87.

Upon hire, Empire Wrecker advised Southern that he would be compensated at 35% of gross revenues after he had been employed by Defendants for 30-60 days.

88.

Empire Wrecker never compensated Southern at a rate of 35% of gross revenues during any period of his employment.

89.

During his employment, Empire Wrecker regularly scheduled Southern to work 6 days during each work week.

90.

At all times material hereto, Southern regularly worked 12 hour shifts (from 8:00 a.m. until 8:00 p.m.) for Empire Wrecker.

91.

At all times material hereto, Southern regularly worked 72 hours during most work weeks.

92.

At all times material hereto, Empire Wrecker made deductions from Southern's wages in the amount of $250.00 from most, if not all, pay checks to cover the costs of damages and operating costs associated with Empire Wrecker's tow truck operated by Southern.

93.

These deductions were not allowed by the FLSA's requirements that wages be paid free and clear. In addition, said deductions often brought Southern below the minimum wage.

94.

At all times material hereto, Defendants were aware of the actual number of hours that Plaintiffs worked during each work week.

95.

Defendants knew or should have known that Plaintiffs were employees within the meaning of the FLSA and, thus, should have been paid in compliance with the FLSA.

96.

29 U.S.C. § 206 requires that Empire Wrecker compensate Plaintiffs at a rate of no less than $7.25 per hour for every hour worked in a work week.

97.

Defendants knew or should have known that  29 U.S.C. § 206 requires that Empire Wrecker should have compensated Plaintiffs at a rate of at least $7.25 per hour for every hour worked in a work week.

98.

During the Relevant time period, Empire Wrecker failed to compensate Plaintiffs at a rate of $7.25 per hour for every hour they worked.

99.

During the Relevant time period, Defendants willfully failed to compensate Plaintiffs at a rate of $7.25 per hour for each hour they worked.

100.

Defendants knew or should have known that the Plaintiffs were entitled to FLSA overtime protections.

101.

29 U.S.C. § 207, requires that Empire Wrecker compensate Plaintiffs at a rate of one and one-half times their regular rate for all time worked in excess of forty (40) hours in a work week.

102.

29 C.F.R. § 778.118 sets forth the manner for calculating overtime wages to employees who receive a portion of their earnings in commission each week.

103.

29 C.F.R. § 778.118 requires that the sum total of the commission earned and other earnings be divided by the total hours worked in order to determine the regular hourly rate.

104.

29 C.F.R. § 778.118 further requires that "(t)he employee must be paid extra compensation at one-half that rate for each hour worked in excess of" forty hours per week.

105.

At all times material hereto, Empire Wrecker failed to calculate a regular rate for Plaintiffs by dividing the sum total of the commissions they earned as tow truck drivers and other earnings by the total hours worked.

106.

Defendants knew or should have known that 28 U.S.C. § 207 required that Empire Wrecker should have compensated Plaintiffs a premium for all time worked in excess of forty hours in a given workweek.

107.

At all times during the Relevant time period, Plaintiffs regularly worked more than forty (40) hours in a given workweek.

108.

At all times material hereto all of Plaintiffs' working efforts were directed at serving Empire Wrecker's customers.

109.

At all times material hereto, Empire Wrecker provided Plaintiffs with all tools, equipment and other materials necessary for Plaintiffs to perform their jobs as tow truck drivers, including the truck.

110.

At all times material hereto, Empire Wrecker failed to pay Plaintiffs at one-and-one-half times this regular rate for time worked in excess of forty (40) hours in any and all workweeks.

111.

At all times material hereto, Empire Wrecker willfully failed to pay Plaintiffs at one-and-one-half times this regular rate for time worked in excess of forty (40) hours in any and all workweeks.

## COUNT I - FAILURE TO PAY MINIMUM WAGE

112.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

113.

At all times material hereto, Plaintiffs have been employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

114.

During the Compensable Periods, Defendants often willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage as established in accordance with Section 6 of the FLSA.

115.

As a result of the underpayment of minimum wages as alleged above, Plaintiffs are entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

116.

As a result of the willful underpayment of minimum wages as alleged above, Plaintiffs  are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b), declaratory and injunctive relief, and reimbursement of reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II - FAILURE TO PAY OVERTIME

117.

The allegations in the previous paragraphs are incorporated by reference as if fully set out in this paragraph.

118.

At all times material hereto, Plaintiffs have been employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

119.

At all times material hereto, Plaintiffs regularly worked in Defendants' employ in excess of forty (40) hours during each work week.

120.

At all times material hereto, Empire Wrecker failed to pay Plaintiffs at one and one-half times their regular hourly rate for time worked in excess of forty (40) hours during each work week.

121.

At all times material hereto, Defendants willfully failed to pay Plaintiffs at one and one-half times their hourly regular rate for work in excess of forty (40) hours in most, if not all, work weeks.

122.

Plaintiffs are entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

123.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

124.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III – ILLEGAL RETALIATION AS TO PLAINTIFF BURDETTE

125.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

126.

On November 10, 2017, Burdette and Empire Wrecker's manager, "Arthur" engaged in a conversation wherein Burdette stated that Empire Wrecker had failed to properly compensated Burdette for hours he worked.

127.

During this November 10, 2017 conversation, Burdette complained to "Arthur" that Empire Wrecker had failed to pay him minimum wage or overtime compensation.

128.

During this November 10, 2017 conversation, Burdette asked that Empire Wrecker pay him minimum wage and overtime compensation that was due.

129.

Burdette's November 10, 2017 request to be properly compensated as set forth above constitutes protected activity within the meaning of the FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3).

130.

Empire Wrecker terminated Burdette's employment on November 11, 2017.

131.

Defendants terminated Burdette's employment on November 11, 2017 in retaliation for his protected activity in violation of FLSA§ 15(a)(3), 29 U.S.C. § 215(a)(3).

132.

As a direct and foreseeable result of Defendants' unlawful retaliation, Burdette has suffered loss of employment, emotional distress, loss of income, and other employee benefits in an amount to be proven at trial.

133.

Burdette is entitled to liquidated damages in addition to the damages set forth in Paragraph 91, in accordance with FLSA § 16 (b), 29 U.S.C. § 216(b), because Defendants have willfully and repeatedly violated the FLSA.

134.

Defendants are indebted to Burdette for his costs of litigation, including his reasonable attorneys' fees, in accordance with FLSA § 16 (b), 29 U.S.C. § 216(b).

## COUNT IV - BREACH OF CONTRACT AS TO PLAINTIFF BURDETTE

135.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

136.

Burdette and Empire Wrecker were parties to an oral contract of employment (hereafter "the Contract") from on or about September 28, 2017 through November 11, 2017.

137.

The Contract provided that Empire Wrecker would pay Burdette for work that was performed by Burdette on behalf of and for the benefit of Defendants.

138.

After Burdette's November 10, 2017 protected activity and his subsequent termination, Empire Wrecker failed to pay Burdette his last paycheck.

139.

Empire Wrecker's failure to pay Burdette for work performed during his last week of employment constitutes a material breach of the Contract for which Empire Wrecker is liable.

## COUNT V – QUANTUM MERUIT AS TO PLAINTIFF BURDETTE

140.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

141.

From on or September 28, 2017 through November 11, 2017, Burdette served as a tow truck driver for Defendant Empire Wrecker.

142.

Burdette's service as a tow truck driver for Empire Wrecker as described above was valuable to Defendant Empire Wrecker.

143.

Empire Wrecker requested Burdette's service as a tow truck driver.

144.

Empire Wrecker knowingly accepted Burdette's service as a tow truck driver.

145.

The receipt of Burdette's services as a tow truck driver for Empire Wrecker without compensation would be unjust.

146.

Burdette expected to be compensated at the time he provided his services as a tow truck driver.

147.

Burdette is entitled to a recover from Empire Wrecker the reasonable value of the service he provided as a tow truck driver for Defendant during his last week of employment, in an amount to be determined at trial.

**COUNT VI - PROMISSORY ESTOPPEL AS TO AS TO PLAINTIFF BURDETTE**

148.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

149.

On September 28, 2017, Empire Wrecker promised to pay Burdette in return for Burdette's service as a tow truck driver for it.

150.

Empire Wrecker should have reasonably expected that Burdette would induce action in reliance of said promise, i.e., serve as a tow truck driver for Defendant.

151.

Empire Wrecker's promise induced Burdette to act in reliance thereof, i.e., to serve as a tow truck driver for Defendant, to his detriment.

152.

Burdette's service as a tow truck driver for Empire Wrecker conferred a benefit on Defendant.

153.

Empire Wrecker failed to pay Burdette in accordance with their promise during his last week of employment.

154.

Burdette relied on Defendant's promise.

155.

Burdette's reliance on Defendant's promise was reasonable.

156.

Injustice can only be avoided by enforcement of Defendant's promise.

157.

Burdette is entitled to a recover from Empire Wrecker the reasonable value of the services he provided as a tow truck driver for Defendant during his last week of employment, in an amount to be determined at trial.

## COUNT VII - BREACH OF CONTRACT AS TO PLAINTIFF SOUTHERN

158.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

159.

Southern and Empire Wrecker were parties to an oral contract of employment (hereafter "the Contract") from on or about August 1, 2017 through April 1, 2018.

160.

The Contract provided that Empire Wrecker would pay Southern for work that was performed by Southern on behalf of and for the benefit of Defendants.

161.

Empire Wrecker failed to pay Southern his last paycheck.

162.

Empire Wrecker's failure to pay Southern for work performed during his last 2 weeks employment constitutes a material breach of the Contract for which Empire Wrecker is liable.

### COUNT VIII – QUANTUM MERUIT AS TO PLAINTIFF SOUTHERN

163.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

164.

From on or about August 1, 2017 through April 1, 2018, Southern served as a tow truck driver for Defendant Empire Wrecker.

165.

Southern's service as a tow truck driver for Empire Wrecker as described above was valuable to Defendant Empire Wrecker.

166.

Empire Wrecker requested Southern's service as a tow truck driver.

167.

Empire Wrecker knowingly accepted Southern's service as a tow truck driver.

168.

The receipt of Southern's services as a tow truck driver for Empire Wrecker without compensation would be unjust.

169.

Southern expected to be compensated at the time he provided his services as a tow truck driver.

170.

Southern is entitled to a recover from Empire Wrecker the reasonable value of the service he provided as a tow truck driver for Defendant during his last two weeks of employment, in an amount to be determined at trial.

## COUNT IX - PROMISSORY ESTOPPEL AS TO PLAINTIFF SOUTHERN

171.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

172.

On August 1, 2017, Empire Wrecker promised to pay Southern in return for Southern's service as a tow truck driver for it.

173.

Empire Wrecker should have reasonably expected that Southern would induce action in reliance of said promise, i.e., serve as a tow truck driver for Defendant.

174.

Empire Wrecker's promise induced Southern to act in reliance thereof, i.e., to serve as a tow truck driver for Defendant, to his detriment.

175.

Southern's service as a tow truck driver for Empire Wrecker conferred a benefit on Defendant.

176.

Empire Wrecker failed to pay Southern in accordance with their promise during his last two weeks of employment.

177.

Southern relied on Defendant's promise.

178.

Southern's reliance on Defendant's promise was reasonable.

179.

Injustice can only be avoided by enforcement of Defendant's promise.

180.

Southern is entitled to a recover from Empire Wrecker the reasonable value of the services he provided as a tow truck driver for Defendants during his last two weeks of employment, in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully pray:

1) That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid minimum wages due under the FLSA, plus additional like amounts as liquidated damages;

2) That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus additional like amounts as liquidated damages;

3) That Plaintiff Burdette be awarded an amount to be determined at trial against all Defendants, jointly and severally, in compensatory damages arising from Defendants' unlawful retaliatory acts, including emotional damages, lost wages, and liquidated damages;

4) That the Court order the reinstatement of Plaintiff Burdette to his former position or provide Plaintiff front pay in lieu of reinstatement;

5) That the Court award Plaintiffs Burdette and Southern damages in an amount to be proved at trial against Defendant Empire Wrecker for the state law claims herein asserted in amounts to be proved at trial;

6) That Plaintiffs be awarded prejudgment interest on all amounts owed;

7) That Plaintiffs be awarded nominal damages;

8) That the Court award Plaintiffs their costs of litigation, including their reasonable attorneys' fees, in accordance with the FLSA; and

9) For such other and further relief as the Court deems just and proper.

Respectfully submitted,

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com
benjamin@dcbflegal.com

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Ga. Bar No. 080791

*/s/ Mitchell D. Benjamin*
Mitchell D. Benjamin
Ga. Bar No. 049888

Counsel for Plaintiffs